Auto Service, Inc. v. Commissioner.
Auto Serv. v. Commissioner
Docket No. 110022.
United States Tax Court
1943 Tax Ct. Memo LEXIS 242; 2 T.C.M. (CCH) 318; T.C.M. (RIA) 43305; June 21, 1943
*242 Samuel Klein, Esq., 60 Park Place, Newark, N.J., for the petitioner. Paul P. Lipton, Esq., for the respondent. OPPER
Memorandum Opinion OPPER, Judge: This proceeding seeks a redetermination of deficiencies in petitioner's income and excess-profits tax for the years 1938 and 1939 as follows: 1938
1939
Income
$737.74
$733.13
Excess-profits
94.12
48.00
The sole question is whether petitioner is entitled to exhaustion in each of the years of the leasehold held by it. [The Facts] Petitioner was organized under the laws of the State of New Jersey for the purpose of acquiring a ten-year lease from the Pennsylvania Railroad Company to an unimproved tract of land near the Newark, New Jersey, Airport. Petitioner filed corporation income and excess-profits tax returns for the years in question with the collector of internal revenue for the fifth district of New Jersey. Petitioner's sole stockholder at the time of its organization was one Harry Wagman. On July 29, 1935, the Pennsylvania Railroad Company subleased the land to petitioner for a period of ten years from August 1, 1935. Renewal privileges were not contained in the lease. Further subletting was permitted *243 with the approval of the lessor railroad. Charles H. Bennett had endeavored in 1934 to secure a lease of the property in question from the railroad, but had been uable to do so. Prior to October 10, 1935, he negotiated with Wagman relative to acquiring the lease. In the early part of the negotiations he did not know that petitioner held the lease. When this fact was disclosed he did not endeavor to secure an assignment of the lease. On October 10, 1935, Bennett purchased all of petitioner's outstanding stock for the sum of $58,000, payment being deferred as evidenced by a series of notes to be amortized over a period of five years. The otes were delivered to Wagman. Title to the stock was held by Bennett, but the stock was held in escrow as collateral security for the payment of the purchase price. Bennett caused a leasehold asset of $58,000 to be set up on petitioner's books. By mutual agreement, on November 1, 1939, the purchase price was reduced to $34,000, and the time was extended for the payment of the notes. After the acquisition of the stock by Bennett a gasoline station was constructed on the land at a cost of $15,600.87. Petitioner filed Federal income tax returns for *244 1936 to 1939, inclusive, in which it reported gross income from the conduct of a retail gasoline business, and claimed as deductions expenses incurred in theconduct of the business as reflected in its books of account. In 1938 and 1939, the taxable years in question, petitioner reported net income of $928.12 and $190.32, respectively, after claimed deductions of $3,900 and $3,120, respectively, for compensation paid by it as salary to Bennett who reported such salary in his individual income tax returns. He did not report any income from the conduct of petitioner's business. Respondent has disallowed petitioner deductions of $5,800 each for 1938 and 1939 for exhaustion of the leasehold. [Opinion] Whatever may be the apparent hardship to petitioner's principal stockholder, and whatever other experients may have been open to him for recovery of his capital investment in the leasehold, as embodied in the value of petitioner's stock, we are satisfied that it is not possible here to grant petitioner a depreciation allowance for leasehold cost. By hypothesis the lease cost it nothing, and the exhaustion of its investment, as distinguished from that of its principal stockholder, *245 cannot consequently furnish any justification for obsolescence or depreciation allowance. See , certiorari denied, . Nor would this be an appropriate case for disregard of the corporate individuality, even were the law on the subject more favorable. . If in this situation the corporate body were to be overlooked, it would be petitioner's existence that we should have to disregard. But it is here as a petitioner and it seeks here not to have its gross income eliminated for tax purposes, but only to press a claim to offsetting deductions, a position which cannot be reconciled with a plea of non-existence. Cf. . There is thus presented no true premise for piercing the corporate veil; and, if more were needed, the propriety of this conclusion appears convincingly from the failure of petitioner's sole stockholder to report its net income as his own. He *246 is not before us, and if we were, in spite of the condition of the pleadings and the posture in which the case is presented, to excuse petitioner from tax on its gross income on the theory that it was no more than a shell, the net income concededly produced by its operations and shown by its returns would thus escape tax completely. No principle that we know of can be advanced to justify such a result. Decision will be entered for the respondent.